**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHANELLE ZIMMERMAN, BARBARA STEETLE, ROBERT WARUSZEWSKI, WENDY MARSHALL, ANGELA HOLLANDSWORTH, and KEVIN HARRISON individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HIGHMARK, INC., a Pennsylvania Corporation,<br><br>Defendant.<br><br>This Document Relates To: All Actions | Master File No.: 2:23-cv-00250-NR<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT HIGHMARK INC.'S BRIEF IN SUPPORT OF MOTION TO CERTIFY ORDER FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Justin J. Kontul (PA ID No. 206026)
Michael B. Galibois (IL ID No. 6272257, *pro hac vice*)
Ted A. Hages (PA ID No. 327324)
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tel. 412.288.3131
Fac. 412.288.3063
jkontul@reedsmith.com
mgalibois@reedsmith.com
thages@reedsmith.com

*Counsel for Highmark Inc.*

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

BACKGROUND ........ 4

ARGUMENT ........ 5

I. Standard for Certification of Interlocutory Appeal ........ 5

II. This Court's Order Denying Dismissal For Lack Of Article III Standing Presents A Controlling Question Of Law ........ 6

III. This Court's Order Denying Dismissal For Lack Of Article III Standing Presents Substantial Grounds For Difference Of Opinion ........ 8

IV. An Immediate Appeal Of This Court's Order Denying Dismissal For Lack Of Article III May Materially Advance The Ultimate Resolution Of This Case ........ 17

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrenholz v. Board of Trustees*,
219 F.3d 674 (7th Cir. 2000) .....6

*Al Maqaleh v. Gates*,
620 F. Supp. 2d 51 (D.D.C. 2009) .....19

*Allen v. Wright*,
468 U.S. 737 (1984) .....14

*Alonzo v. Refresco Bevs. US, Inc.*,
No. 23-22695 (GC), 2024 U.S. Dist. LEXIS 176951 (D.N.J. Sept. 30, 2024) .....2, 11

*In re Am. Fin. Res., Inc.*,
No. 22-1757, 2023 U.S. Dist. LEXIS 108411 (D.N.J. March 29, 2023) .....12

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*,
No. 19-md-2904, 2021 U.S. Dist. LEXIS 240360 (D.N.J. Dec. 16, 2021) .....15, 16

*In re Baker & Getty Fin. Servs.*,
954 F.2d 1169 (6th Cir. 1992) .....18

*Beazer E., Inc. v. The Mead Corp.*,
No. CIV.A.91-408, 2006 U.S. Dist. LEXIS 74743 (W.D. Pa. Oct. 12, 2006) .....7, 8, 20

*Big Apple BMW, Inc. v. BMW of North America, Inc.*,
974 F.2d 1358 (3d Cir. 1992) .....6

*Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief & Dev.*,
291 F.3d 1000 (7th Cir. 2002) .....6

*Boje v. Mercyhurst Univ.*,
No. 23-46, 2024 U.S. Dist. LEXIS 39503 (W.D. Pa. March 6, 2024) .....2, 11

*Canela v. Costco Wholesale Corp.*,
971 F.3d 845 (9th Cir. 2020) .....6

*Caruana v. GMC*,
204 Fed. App'x 511 (6th Cir. 2006) (unpublished) .....6

*In re Chocolate Confectionary Antitrust Litig.*,
607 F. Supp. 2d 701 (M.D. Pa. 2009) .....17, 18, 19

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................13

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) .................... *passim*

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978)....................6

*Delzotti v. Sema*,
No. 17-7762, 2018 U.S. Dist. LEXIS 132486 (D.N.J. Aug. 6, 2018) ....................7

*E.F. Hutton & Co. v. Hadley*,
901 F.2d 979 (11th Cir. 1990) ....................6

*Edward J. Sweeney Sons, Inc. v. Texaco, Inc.*,
637 F.2d 105 (3d Cir. 1980)....................15

*Forsyth v. Kleindienst*,
599 F.2d 1203 (3d. Cir. 1979)....................19

*Gaddy v. Long & Foster Cos.*,
No. 21-2396, 2022 U.S. Dist. LEXIS 46657 (D.N.J. Mar. 15, 2022)....................16

*Giant Eagle, Inc. v. Am. Guar. & Liab. Ins. Co.*,
No. 2:19-cv-00904, 2022 U.S. Dist. LEXIS 659 (W.D. Pa. Jan. 3, 2022) ....................7

*Gibel v. Iron Cumberland, LLC*,
No. 23-2050, 2025 U.S. Dist. LEXIS 41182 ....................8

*Gress v. Freedom Mortg. Corp.*,
No. 1:19-cv-375, 2019 U.S. Dist. LEXIS 244071 (M.D. Pa. Sept. 3, 2019)....................7

*In re Horizon Healthcare Servs. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017) (Schwartz, J., concurring) ....................14, 16, 17

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ....................15

*Jankowski v. Lellock*,
No. 2:13-cv-194, 2014 U.S. Dist. LEXIS 157353 (W.D. Pa. Oct. 5, 2014)....................6

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) (en banc).................... *passim*

*Klapper v. Commonwealth Realty Trust*,
662 F. Supp. 235 (D. Del. 1987)....................7, 17, 18

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990)....................19

*Knopick v. Downey*,
963 F. Supp. 2d 378 (M.D. Pa. 2013)....................6, 8

*Krangel v. Crown*,
791 F. Supp. 1436 (S.D. Cal. 1992)....................19

*Lewis v. Casey*,
518 U.S. 343 (1996)....................16

*Lewis v. Ford Motor Co.*,
685 F. Supp. 2d 557 (W.D. Pa. 2010)....................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................7

*In re Magic Marker Sec. Litig.*,
472 F. Supp. 436 (E.D. Pa. 1979)....................5

*McGowan v. Core Cashless, LLC*,
No. 2:23-CV-00524, 2024 U.S. Dist. LEXIS 22104 (W.D. Pa. Feb. 8, 2024)....................3, 12

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2019)....................3, 13

*McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*,
No. 2:10-cv-143, 2014 U.S. Dist. LEXIS 197504 (W.D. Pa. May, 2014)....................17

*Mohawk Indus. v. Carpenter*,
558 U.S. 100 (2009)....................5

*Montgomery County v. Merscorp, Inc.*,
No. 11-CV-6968, 2014 U.S. Dist. LEXIS 129096 (E.D. Pa. Sept. 8, 2014)....................18

*Obasi Inv., Ltd. v. Tibet Pharm., Inc.*,
931 F.3d 179 (3d Cir. 2019)....................8

*In re Practicefirst Data Breach Litig.*,
No. 1:21-CV-00790, 2022 U.S. Dist. LEXIS 19272 (W.D.N.Y. Feb. 1, 2022)....................13

*Reilly v. Ceridian Corporation*,
664 F.3d 38 (3d Cir. 2011).................... *passim*

*Ritz Camera & Image, LLC v. SanDisk Corp.*,
463 Fed. App'x. 921 (Fed. Cir. 2012) (unpublished)....................6

*Rosado v. Ford Motor Co.*,
337 F.3d 291 (3d Cir. 2003)....................6

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) ....................6

*Schalliol v. Fare*,
206 F. Supp. 2d 689 (E.D. Pa. 2002) ....................19

*Scifo v. Alvaria, Inc.*,
No. 23-cv-10999-ADB, 2024 U.S. Dist. LEXIS 170093 (D. Mass. Sept. 20, 2024) ....................14

*Sierra Club v. Genon Power Midwest LP*,
No. 2:19-cv-1284, 2021 U.S. Dist. LEXIS 174710 (W.D. Pa. Sep. 14, 2021)....................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................16

*Stecyk v. Bell Helicopter Textron*,
No. 94-CV-1818, 1998 U.S. Dist. LEXIS 44 (E.D. Pa. Jan. 5, 1998)....................7, 18

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ....................17, 18

*Tignor v. Dollar Energy Fund, Inc.*,
745 F. Supp. 3d 189 (W.D. Pa. 2024)....................12

*Tong v. Henderson Kitchen, Inc.*,
No. 17-1073, 2018 U.S. Dist. LEXIS 176294 (E.D. Pa. Oct. 12, 2018) ....................4

*Ungar v. Dunkin' Donuts of Am., Inc.*,
Nos. 72-88, 72-1526, 1975 U.S. Dist. LEXIS 12964 (E.D. Pa. Arp. 8, 1975) ....................18, 19

**Statutes**

28 U.S.C. § 1292(b) .................... *passim*

**Other Authorities**

16 Charles Alan Wright, et al., *Federal Prac. & Proc. Juris.* § 3930 (2d ed. 1996)....................17

**INTRODUCTION**

In its April 28, 2025 motion to dismiss opinion, this Court decided a key threshold question of law—whether named Plaintiffs have standing under Article III of the Constitution to sue for purported injuries following an alleged data breach. As the Court's decision stated, "[f]or many years, courts have grappled with the contours of an injury in fact in data-breach cases," a "tricky" question, ECF 42 at 4, and one that has caused numerous courts in and out of the Third Circuit to divide—both in how they apply the relevant legal standards and the standing outcomes they reach. Joining in the mix, this Court determined that the requirements for standing have been met here. But with great respect, the Third Circuit could see things differently, particularly given the divergence in district court decisions and the questions of first impression this case presents. As such, certification of the Court's April 28 decision for immediate appellate review under 28 U.S.C. § 1292(b) should be granted so that the Third Circuit can provide important and needed guidance.

In finding that the named Plaintiffs have standing here, this Court relied heavily on the Third Circuit's most recent data breach standing decision, *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022). But *Clemens*, as this Court noted, is different from this case in multiple, and as Highmark believes, material ways. Unlike in *Clemens*, here, "there isn't anything alleged as to who the hacker was or how the hacker used the data" or that "the hacker posted the data it stole onto the dark web." ECF 42 at 7. Thus, while standing was found in *Clemens* when a well-known, notorious cybercriminal group "*intentionally* gained access to and *misused* the data," *Clemens*, 48 F.4th at 157 (emphasis original), the case for standing here was based on something different: a series of "inferences" which, in this Court's view, when cobbled "together, is enough to plausibly allege an injury that is sufficiently imminent." ECF 42 at 7.

Whether such inferences are enough to confer standing—particularly where Plaintiffs' data may only *potentially* have been accessed—is an open legal question that reasonable jurists could

debate. Indeed, they *have*. Several district courts in this Circuit have found that similarly situated plaintiffs lack standing. *See, e.g.*, *Boje v. Mercyhurst Univ.*, No. 23-46, 2024 U.S. Dist. LEXIS 39503, *2-3, 11-12 (W.D. Pa. March 6, 2024) (holding that, though "cybercriminals gained unauthorized access to highly sensitive PII," plaintiffs failed to show an actual or imminent injury where "it was not known whether the hacker(s) even 'read, copied, or understood the data'") (citation omitted); *Alonzo v. Refresco Bevs. US, Inc.*, No. 23-22695 (GC), 2024 U.S. Dist. LEXIS 176951, *13-14 (D.N.J. Sept. 30, 2024) (plaintiffs did not establish standing where they did "not set forth any specific allegations about who was behind the [] data breach" and did "not allege that the hacker actually accessed her specific data"). Moreover, when the Third Circuit was presented with allegations where, like here, the data was only potentially accessed, the Court concluded that a "string of hypothetical injuries" following a data breach did "not meet the requirement of an 'actual or imminent' injury." *Reilly v. Ceridian Corporation*, 664 F.3d 38, 44 (3d Cir. 2011). As the Third Circuit explained, where, as here, a court "cannot [] describe how [Plaintiffs] will be injured … without beginning our explanation with the word 'if': *if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully," Article III standing is not met. *Id.* at 43, 44.

Contrary to these decisions, this Court and other district courts have found standing to be met even where the data was not in fact accessed or was only potentially accessed. That divergence in the law is not surprising, as multiple key standing questions have been left unanswered in the wake of *Reilly* and *Clemens*, and no Third Circuit precedent has since resolved them. For example, *Clemens* identified three "non-exhaustive … guideposts" for courts to consider in conducting a standing analysis. *Clemens*, 48 F.4th at 153. But how the guideposts should be interpreted and applied, especially in instances where data was only *potentially* accessed, is an issue that has been

and, absent further guidance from the Third Circuit, will continue to be the subject of serious debate. For example, courts like this one have found that the first *Clemens* guidepost—which considers the intentionality of the cyber-incident—favors standing where an unknown actor intentionally gained access to a defendant's cyber network. ECF 42 at 5. But other jurists have read the guidepost as requiring something more. *See, e.g.*, *McGowan v. Core Cashless, LLC*, No. 2:23-CV-00524, 2024 U.S. Dist. LEXIS 22104, *6-7 (W.D. Pa. Feb. 8, 2024) ("As regards intentionality, … 'all cyber-attacks involve some degree of intentional conduct,' but, in this case, the alleged Data Breach involved an unknown hacker and where it is unknown whether the hacker, read, copied, or understood the data" and so, plaintiffs "had not sufficiently alleged that the data breach was intentional as defined under" Third Circuit law).

Another guidepost is the "nature of the information *accessed* through the data breach" and whether it "could subject a plaintiff to a risk of identity theft." *Clemens*, 48 F.4th at 154 (emphasis added). But it is not clear, under existing Third Circuit law, if the data's sensitivity even matters if the data was not accessed in the first place. The Second Circuit has addressed that question, holding that the sensitive nature of PII did not move the needle "in the absence of any other facts suggesting that the PII was intentionally *taken* by an unauthorized third party or otherwise misused[.]" *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 304 (2d Cir. 2019) (emphasis added).

With courts sharply divided on a plaintiff's threshold ability to be in court under Article III, the need for immediate appellate review on the standing questions presented here is paramount. Congress enacted the interlocutory appeal statute, 28 U.S.C. § 1292(b), precisely for instances when a district court's order raises a controlling question of law as to which substantial grounds for difference of opinion arise and where immediate appellate guidance could ultimately advance the ultimate resolution of the litigation. Such is the case here, with a complex and potentially

expensive case still in its procedural infancy and with a definitive appellate ruling having the potential to resolve this litigation on a discrete and controlling question of standing that has left courts divided. Moreover, regardless of the outcome of such an appeal, a definitive answer on the question of Plaintiffs' standing will be beneficial, either by revealing that Plaintiffs lack standing to proceed or clarifying the contours of the law on standing in data breach cases, the occurrence of which continues to grow.

Highmark thus respectfully requests that this Court certify the April 28, 2025 order so that Highmark may ask the Third Circuit to grant review under 28 U.S.C. § 1292(b).

## **BACKGROUND**

On December 13, 2022, a phishing email led to a Highmark employee's email account being compromised. ECF 32 (Compl. ¶¶ 49-50). The incident was investigated, which showed only that "a threat actor *may have* accessed emails within [a Highmark] employee's email account …. [and] some of the emails that *may have been accessed* contained [members'] protected health information." ECF 36 (Mot. to Dismiss) Ex. B (Feb. 13, 2023 Notices) (emphasis added). Importantly, there was "no evidence that [members'] information was misused," *id.*, and Plaintiffs did not allege any well-pled facts that the PII/PHI they shared with Highmark was *actually* (as opposed to *potentially*) accessed.[1] Though the operative complaint was filed 6 months after the incident, and many more months have passed since, the only injury alleged in Plaintiffs' complaint

[1] In a conclusory fashion, Plaintiffs' complaint alleged that Highmark announced that an "unauthorized third party gained access to confidential member information[.]" Compl. at ¶ 49. But the cited writing stated only that the third party obtained access to files "that *may have* contained PHI" and that there is no evidence that "the data *potentially* accessed" had been used fraudulently. *See* ECF 36 Ex. A (emphasis added). Because this allegation is inconsistent with a writing referred to in the Complaint, it must be disregarded, and Plaintiffs' allegation that—consistent with Highmark's notices— PII/PHI "may have been exposed or accessed" (*see* Compl. at ¶ 51; ECF 36 Ex. B) controls. *See Tong v. Henderson Kitchen, Inc.*, No. 17-1073, 2018 U.S. Dist. LEXIS 176294, *5 n.2 (E.D. Pa. Oct. 12, 2018) (citation omitted).

is an "increased risk of identity theft and financial fraud" (Compl. ¶ 101) and a few, scattered attempted instances of fraudulent activities that some (but not all) named Plaintiffs allegedly suffered (Compl. ¶¶ 102, 108, 113). But, critically, those instances are not alleged to relate to information Plaintiffs supplied to Highmark or otherwise traced to the incident. Thus, Highmark moved to dismiss this putative class action on July 27, 2023. ECF 35.

On April 28, 2025, this Court denied dismissal. ECF 42. While acknowledging that this case differs from the Third Circuit's decision in *Clemens* in several ways, the Court nevertheless concluded that a "series of facts and reasonable inferences" could be pieced together to substantiate an imminent injury notwithstanding that "there isn't anything alleged as to who the hacker was or how the hacker used the data." *Id.* at 7. Highmark now timely asks that this Court to certify that order for immediate appeal under 28 U.S.C. § 1292(b).

## ARGUMENT

### I. Standard for Certification of Interlocutory Appeal

Under § 1292(b), if a district judge is "of the opinion" that a nonfinal order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the judge "shall so state in writing in such order." 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 752 (3d Cir. 1974) (en banc). As the U.S. Supreme Court has instructed, when these three criteria are met, "district courts should not hesitate to certify an interlocutory appeal" so that the appellate court has an opportunity to decide whether to review an issue "of special consequence." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 111 (2009). Certification "promote[s] the policies underlying interlocutory appeals, including the 'avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense.'" *In re Magic Marker Sec. Litig.*, 472 F. Supp.

436, 438 (E.D. Pa. 1979) (quoting *Katz,* 496 F.2d at 756). Indeed, "[t]he Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), was enacted to meet the recognized need for prompt review of certain nonfinal orders." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978). And so, while district courts maintain discretion, "when the statutory criteria are met," it is "the duty of the district court and of [an appellate court] as well to allow an immediate appeal to be taken[.]" *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000).[2]

## II. This Court's Order Denying Dismissal For Lack Of Article III Standing Presents A Controlling Question Of Law

Certification of the April 28, 2025 order is warranted because it implicates a pure and controlling question of law for interlocutory review: whether Plaintiffs have Article III standing. To determine "whether an order presents a controlling question of law, the court must look to whether (1) an incorrect disposition would constitute reversible error if presented on final appeal; or (2) if the question is so 'serious to the conduct of the litigation either practically or legally.'" *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (quoting *Katz*, 496 F.2d at 755). Standing questions are often certified for and awarded interlocutory review.[3] "Article III standing is 'one of the clearest examples of a controlling question of law'" and an issue squarely appropriate

---

[2] A certification request should be made "'within a reasonable time after the order sought to be appealed.'" *Jankowski v. Lellock*, No. 2:13-cv-194, 2014 U.S. Dist. LEXIS 157353, *9-10 (W.D. Pa. Oct. 5, 2014) (citation omitted). This motion, filed within only 25 days of this Court's April 28, 2025 order, is presented within a reasonable time. *See, e.g.*, *id.* (rejecting argument that motion filed more than 28 days after the order is untimely and accepting as timely certification motion filed 6 months after order, *see* ECF 46); *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief & Dev.*, 291 F.3d 1000, 1008 (7th Cir. 2002) (certification motion filed within 35 days reasonable).

[3] *See, e.g.*, *Rosado v. Ford Motor Co.*, 337 F.3d 291, 293 (3d Cir. 2003); *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 848 (9th Cir. 2020); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992); *Salcedo v. Hanna*, 936 F.3d 1162, 1165 (11th Cir. 2019), *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990); *Caruana v. GMC*, 204 Fed. App'x 511, 512 (6th Cir. 2006) (unpublished); *Ritz Camera & Image, LLC v. SanDisk Corp.*, 463 Fed. App'x. 921, 922 (Fed. Cir. 2012) (unpublished).

for interlocutory appeal. *Gress v. Freedom Mortg. Corp.*, No. 1:19-cv-375, 2019 U.S. Dist. LEXIS 244071, *6 (M.D. Pa. Sept. 3, 2019) (quoting *Beazer E., Inc. v. The Mead Corp.*, No. CIV.A.91-408, 2006 U.S. Dist. LEXIS 74743, *2 (W.D. Pa. Oct. 12, 2006)); *Delzotti v. Sema*, No. 17-7762, 2018 U.S. Dist. LEXIS 132486, *8 (D.N.J. Aug. 6, 2018) (similar).

Moreover, the "Third Circuit has defined a 'controlling question of law' as encompassing not only 'every order which, if erroneous, would be reversible error on final appeal,' but also those orders which are 'serious to the conduct of the litigation, either practically or legally.'" *Giant Eagle, Inc. v. Am. Guar. & Liab. Ins. Co.*, No. 2:19-cv-00904, 2022 U.S. Dist. LEXIS 659, *10 (W.D. Pa. Jan. 3, 2022) (citation omitted); *accord Lewis v. Ford Motor Co.*, 685 F. Supp. 2d 557, 570 (W.D. Pa. 2010); *see Stecyk v. Bell Helicopter Textron*, No. 94-CV-1818, 1998 U.S. Dist. LEXIS 44, at *12-13 (E.D. Pa. Jan. 5, 1998) (question was controlling because it would terminate one party and "significantly reduce the number of issues to be litigated," and acknowledging that "[c]omplete cessation of the litigation as to all claims and all parties is not required").

Respectfully, if the Third Circuit concludes that this Court erred in finding that Plaintiffs have Article III standing—a threshold issue—that appellate ruling would resolve all claims. But even if the Third Circuit decides that Plaintiffs have standing at this stage (or that some Plaintiffs, but not others, do), that would not negate the controlling nature of the question at issue. By definition, "[s]tanding is a 'controlling question of law' … particularly well suited for an interlocutory appeal." *Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 235, 236 (D. Del. 1987). It controls all aspects of a case, as "standing 'must be supported at each stage of litigation in the same manner as any other essential element of the case.'" *Sierra Club v. Genon Power Midwest LP*, No. 2:19-cv-1284, 2021 U.S. Dist. LEXIS 174710, *17 (W.D. Pa. Sep. 14, 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Thus, in addition to the possibility of reversible error, deciding which Plaintiffs and which alleged injuries, if any, pass constitutional muster under Article III will impact every aspect of the litigation. It will dictate the injuries that are actionable and set boundaries on which putative class members have viable claims, affecting class certification, discovery, and the merits. The standing question presented here is unquestionably a controlling question of law.

### III. This Court's Order Denying Dismissal For Lack Of Article III Standing Presents Substantial Grounds For Difference Of Opinion

As for the second criterion, standing questions in the data breach context breed substantial grounds for difference of opinion and particularly so here. Substantial grounds exist where "reasonable jurists" could disagree as to the correct resolution of a disputed question. *Obasi Inv., Ltd. v. Tibet Pharm., Inc.*, 931 F.3d 179, 183 (3d Cir. 2019). Specific examples of substantial grounds for difference of opinion can arise "where there is genuine doubt or conflicting precedent as to the correct legal standard, conflicting and contradictory opinions, or the absence of controlling law on a particular issue." *Gibel v. Iron Cumberland, LLC*, No. 23-2050, 2025 U.S. Dist. LEXIS 41182, at *5 (W.D. Pa. Mar. 7, 2025 (collecting cases). Here, certification is warranted because a review of relevant case law shows that there are "conflicting interpretations from numerous courts" on these issues—which is the "clearest evidence of 'substantial grounds for difference of opinion'" under § 1292(b). *Knopick v. Downey*, 963 F. Supp. 2d 378, 398 (M.D. Pa. 2013) (quoting *Beazer*, 2006 U.S. Dist. LEXIS 74743, at *2). Specifically, the no-standing ruling warrants certification for at least four independent reasons.

***First, reasonable jurists debate what facts, if any, would permit a court to find that a plaintiff has pled an injury-in-fact in data breach cases where the data was only "potentially accessed."*** In *Reilly*, the Third Circuit held that an alleged increased risk of identity theft or fraud where data only "*may* have been accessed" by an unknown actor is not enough to confer standing,

a conclusion embraced by "[m]ost courts" to consider the issue. 664 F.3d at 43 (emphasis original). Such concerns about harms that may or may not occur are too "attenuated" to be actionable and are "dependent on entirely speculative, future actions of an unknown third-party." *Id.* at 42; *see Clemens*, 48 F.4th at 153 (reiterating *Reilly's* holding that "an alleged risk of *future* identity theft or fraud stemming from a data breach in which an unknown hacker *potentially* accessed sensitive personal and financial information" is insufficient) (emphasis added).

Here, Plaintiffs similarly allege only that their data "may have been exposed or accessed" by an unknown actor. Compl. ¶ 54. They do not allege that their data was in fact accessed, and even if it were, that the data was read and understood, then downloaded, saved, copied, or stolen, and then shared, published, sold for profit, ransomed, or posted on the Dark Web. Accordingly, like *Reilly*, "no identifiable taking occurred; all that is known is that a firewall was penetrated," and so, "we cannot now describe how [Plaintiffs] will be injured … without beginning our explanation with the word 'if': *if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully…." 664 F.3d at 43, 44. As the Third Circuit has instructed, this "string of hypothetical injuries do[es] not meet the requirement of an 'actual or imminent' injury." *Id.* at 44.

That is in contrast to a case like *Clemens*, where—unlike *Reilly* and unlike here—specific, well-pled facts substantiated a concrete and imminent injury beyond "hypotheticals." *Clemens*, 48 F.4th at 157. Namely, the breach in *Clemens* was not by an unknown phisher, but "a sophisticated ransomware group that is notorious for encrypting companies' internal data" and "demanding ransom" on threat of dissemination of PII to the Dark Web. *Id.* And in *Clemens*, when no ransom was paid or "for nefarious reasons unknown," the notorious cybercriminals did just that—they "encrypted" the Named Plaintiff's data, "held it for ransom," and "published [the Named

Plaintiff's] data on the Dark Web." *Clemens*, 48 F.4th at 157, 150. As the Third Circuit emphasized in distinguishing *Reilly* from *Clemens*, the latter involved a notorious cybercriminal group that "*intentionally* gained access to and *misused* the data." *Id.* at 157. "*This* set of facts" is what separates a case like *Clemens* from one like *Reilly*. *Id.* at 157 (emphasis added). The *Clemens* variety "clearly present a more imminent injury than the ones we deemed establish only a hypothetical injury in *Reilly*." *Id.* at 157 (emphasis added).

For these reasons, in Highmark's view, *Reilly* is the relevant Third Circuit analogue here, and Highmark respectfully submits that the April 28, 2025 opinion erred in finding standing based on *Clemens* without wrestling with this case's similarities to *Reilly*. But that need not be decided on this motion, and instead, the only thing the Court must determine is whether reasonable jurists could debate if *Reilly* or *Clemens* controls in a case like this one. The answer to that question is yes—reasonable jurists could and indeed have disagreed.

As the April 28, 2025 opinion aptly noted, several key *Clemens*-like facts are not present here: "in *Clemens*, the company knew who the hacker was, and it was also known when and how the hacker posted the data it stole onto the dark web"—and "in this case, unlike *Clemens*, there isn't anything alleged as to who the hacker was or how the hacker used the data" or that "the hacker posted the data it stole onto the dark web." ECF 42 at 7. This Court held that such "direct evidence isn't required to bestow standing," *id.*, finding instead that there is standing based on a "series of facts and reasonable inferences." *Id.* But reasonable jurists could debate whether allegations of *specific and actual access* to the Plaintiffs' data are required in the first instance and, even if they are not, what a plaintiff must plead to establish an injury-in-fact for purposes of standing when data was only "potentially" accessed. *Reilly*, 664 F.3d at 40. Reasonable jurists have in fact diverged on these questions and how to apply *Reilly* and *Clemens*, thus, demonstrating the

substantial grounds for difference of opinion. *See, e.g.*, *Boje*, 2024 U.S. Dist. LEXIS 39503, *11-12 (case is "[u]nlike … *Clemens*" and "more closely mirror[s] … *Reilly*, where, as here, it was not known whether the hacker(s) even 'read, copied, or understood the data'") (quoting *Reilly*, 664 F.3d at 40); *Alonzo*, 2024 U.S. Dist. LEXIS 176951, *13-14 (case is "[u]nlike *Clemens*" and "similar to *Reilly*" where plaintiff did "not set forth any specific allegations about who was behind the Refresco data breach" and did "not allege that the hacker actually accessed her specific data").

***Second, reasonable jurists could and do debate whether the guideposts in* Clemens *support a finding that Plaintiffs have pled imminent harm in a data breach like this.*** As this Court noted, the Third Circuit in *Clemens* identified three "non-exhaustive factors" that can "serve as useful guideposts" in determining whether an alleged "injury is imminent … versus hypothetical in the data breach context." 48 F.4th at 153. They are: (1) "whether the data breach was intentional[;]" (2) "whether the data was misused[;]" and (3) "whether the nature of the information accessed through the data breach could subject a plaintiff to a risk of identity theft." *Id.* at 153-54.

These factors did not, however, do away with or diminish *Reilly's* holding, which *Clemens* in fact reinforced—merely alleging that an "unknown hacker potentially accessed sensitive personal and financial information" supposedly causing "an alleged risk of future identify theft" is not enough "for purposes of standing." *Clemens*, 48 F.4th at 153; *accord* at 157. And most importantly for this motion, judicial decisions reflect substantial grounds for difference of opinion as to how the *Clemens* factors should be applied, if at all, in instances where, like here, data was only *potentially* accessed.

Starting with the first factor, intentionality, this Court concluded that "the data breach here was the product of an intentional attack—*i.e.*, a malicious email phishing campaign by an unauthorized third party." ECF 42 at 5. But reasonable jurists disagree whether a phishing email

from an unknown source, not necessarily aimed at Plaintiffs' PII nor used to threaten a ransom or profit from it, presents the type and degree of intentionality contemplated by the Third Circuit.

In *McGowan*, 2024 U.S. Dist. LEXIS 22104, for example, District Judge Horan and Magistrate Judge Lenihan concluded that the plaintiff "had not sufficiently alleged that the data breach was intentional as defined under *Reilly*," though it was pleaded as "an intentional criminal act" to procure "access … by activating a previously deactivated administrator account and installing a digital skimmer tool to capture the text inputted into online payment portals." *Id.* at *5, 7. As Judges Horan and Lenihan explained: "As regards intentionality, … 'all cyber-attacks involve some degree of intentional conduct,' but, in this case, the alleged Data Breach involved an unknown hacker and [] it is unknown whether the hacker, read, copied, or understood the data." *Id.* at *6 (quoting Judge Lenihan). These facts made the alleged intentionality "more akin to *Reilly*," where "an unknown hacker infiltrated defendant's system and potentially gained access to personal and financial information"—circumstances the Third Circuit deemed insufficient to show "'that the intrusion was intentional or malicious.'" *Id.* (quoting *Reilly*, 664 F.3d at 44).

In other words, what was missing in *McGowan* was "the type of sophisticated intent" that existed in *Clemens*—a notorious, well-known scheme that unquestionably stole data, ransomed it, and when no ransom was paid, released it to the Dark Web. *Id.* at *5-6. The same intentionality is missing here. Nevertheless, this April 28, 2025 decision diverges from *McGowen's* interpretation of intentionality, leading to an intra-circuit divide with other courts that have embraced it. *See In re Am. Fin. Res., Inc.*, No. 22-1757, 2023 U.S. Dist. LEXIS 108411, *13 (D.N.J. March 29, 2023) (holding case is "more like *Riley* [sic], than *Clemens*" where "Plaintiffs generally state that 'criminals' hacked into AFR's systems with the intent to misuse PII, [but] unlike in *Clemens*, the intentions and methods of the AFR data breach hacker(s) are entirely unknown"); *Tignor v. Dollar*

*Energy Fund, Inc.*, 745 F. Supp. 3d 189, 200 (W.D. Pa. 2024) (similar). That divergence on how to read and apply the first *Clemens* guidepost presents a novel question in Third Circuit jurisprudence that an immediate interlocutory appeal could resolve, for the benefit of this case and others pending in the Circuit.

Additionally, the third *Clemens* guidepost[4] asks "whether the nature of the information *accessed* through the data breach could subject a plaintiff to a risk of identity theft." *Clemens*, 48 F.4th at 154 (emphasis added). By its terms, this factor assumes that access already has occurred, and for that reason, there are substantial grounds for difference of opinion as to whether this factor is applicable in cases where, like here, there are no well-pled facts that a plaintiff's data was in fact accessed. In such circumstances, the Third Circuit could conclude that the sensitive nature of the data does not show an injury to be imminent in the absence of actual access to the data in the first place—just as the Second Circuit has concluded. *See McMorris*, 995 F.3d at 304 (analyzing the same three factors as *Clemens* and clarifying as to the third factor: "[W]hile the information … included the sort of PII that might put Plaintiffs at a substantial risk of identity theft or fraud, in the absence of any other facts suggesting that the PII was intentionally taken by an unauthorized third party or otherwise misused, this factor alone does not establish an injury in fact" and "[t]o hold otherwise would allow plaintiffs to string together a lengthy 'chain of possibilities' resulting in injury") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)); *accord In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790, 2022 U.S. Dist. LEXIS 19272, *22 (W.D.N.Y. Feb. 1, 2022). This issue of first impression for the Third Circuit also supports certification.

[4] The next section addresses the second *Clemens* factor relating to "misuse."

***Third, reasonable jurists could and do debate whether the traceability analysis applied here is sufficient.*** "In addition to proving injury-in-fact, standing also requires [Plaintiffs] to prove traceability"—*i.e.*, "that the injury was caused by the challenged action of the defendant as opposed to an independent action of a third party." *Clemens*, 48 F.4th at 158. As to this distinct requirement, the April 28, 2025 order provides that "Plaintiffs' allegations of misuse … are sufficient to establish a causal link between the data breach and misuse." ECF 42 at 9.

Reasonable jurists could debate whether a more rigorous traceability analysis is required, where, as here, the causal chain from phishing to an imminent risk of identity theft is based on a chain of "inferences." *See, e.g. Allen v. Wright*, 468 U.S. 737, 759 (1984) (rejecting "standing" where the "links in the chain of causation between the challenged [] conduct and the asserted injury are far too weak").

Respectfully, reasonable jurists could disagree with this Court's conclusion that the allegations relating to certain named Plaintiffs satisfy the traceability burden. At best, some (but not all) named Plaintiffs allege attempted misuses that occurred months following the phishing incident. ECF 42 at 5-6 (noting unspecified personal information of one plaintiff was found on the Dark Web, an unauthorized credit card purchase was attempted as to another, and a third suffered a fraudulent debit card charge as well as attempted misuses). But none of these events are tied to *this* incident versus other potential points of exposure in our ever-digitalized world. *See In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 644 n.6 (3d Cir. 2017) (Schwartz, J., concurring) (rejecting as "conclusory" the assertion that data breach caused identity theft, because "[w]hile Plaintiffs allege that a false tax return was submitted to the Internal Revenue Service bearing [Named Plaintiff's] and his wife's names, and that someone used his credit card, the factual allegations do not show that these events were tied to theft"); *Scifo v. Alvaria, Inc.*, No.

23-cv-10999-ADB, 2024 U.S. Dist. LEXIS 170093, *10 (D. Mass. Sept. 20, 2024) (no standing where plaintiffs offer "no more than conclusory allegations and speculation regarding how [an unauthorized debit card charge, unauthorized attempts to use social media accounts, and increases in spam calls and emails] of misuse are traceable to the Data Breach"). Indeed, Plaintiffs offer no well-pled facts that the particular PII/PHI that they gave to Highmark was the same information associated with the alleged misuse asserted. *See Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018) (traceability sufficiently pled where defendant was the "the only common source that collected and continued to store social security numbers that were required to open a credit card account").

Moreover, as the Third Circuit has explained, just because one event follows another does not mean the first event caused the second event, or even that the two events are in any way related. *See Edward J. Sweeney Sons, Inc. v. Texaco*, *Inc.,* 637 F.2d 105, 116 (3d Cir. 1980) (explaining the "post hoc ergo propter hoc" fallacy which "consists of reasoning from sequence to consequence, that is, assuming a causal connection between two events merely because one follows the other"). So here, it is certainly debatable that an alleged financial injury occurring sometime after the phishing incident (for example, the discovery of a fraudulent debit card charge as alleged by Plaintiff Waruszweski) somehow creates a reasonable inference that *this* incident somehow caused the alleged injuries—especially, where none of the plaintiffs, including Plaintiff Waruszweski, tie the alleged financial injury to any information provided to Highmark.

***Finally, reasonable jurists could and do debate whether a plaintiff-by-plaintiff standing analysis was required as to each named Plaintiff***. "Each named plaintiff in a class action must personally demonstrate standing independently of any claims brought on behalf of a putative class." *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, No. 19-md-2904,

2021 U.S. Dist. LEXIS 240360, *34 (D.N.J. Dec. 16, 2021). "The requirements for standing do not change in the class action context" and so, the "'named plaintiffs who represent a class must allege and show that they personally have been injured[.]'" *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see Clemens*, 48 F.4th at 153 n.4 (reiterating that the "'named plaintiffs who represent a class 'must allege and show that they personally have been injured,''" and so, the standing "inquiry should focus on the misuse of information particular to the *plaintiff*—not other members of the class") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016)).

For this reason, reasonable jurists could debate this Court's decision to analyze named Plaintiffs' standing as if they were a congruent whole given the meaningful differences in the alleged injuries-in-fact they assert. *See, e.g.*, ECF 36 at 8-10 and ECF 39 at 4, 6-8 (analyzing the specific, differentiated alleged harms). Indeed, other jurists have taken a plaintiff-by-plaintiff approach. *See, e.g.*, *In re Am. Med.*, 2021 U.S. Dist. LEXIS 240360, *37-38 (explaining that "the fact that *some* plaintiffs' Personal Information may have been accessed and misused does not necessarily create a particularized injury as to *all* Plaintiffs" and a "Court must individually analyze the unique injuries asserted by each"); *Gaddy v. Long & Foster Cos.*, No. 21-2396, 2022 U.S. Dist. LEXIS 46657, *10-11 (D.N.J. Mar. 15, 2022) ("'actual misuse'" of one named plaintiff's data, though "perhaps sufficient to confer standing on [her], does not demonstrate that [other] Plaintiffs [] have experienced an injury in fact").

That divergence, coupled with the Supreme Court and Third Circuit pronouncements calling for personalized standing analyses of each named plaintiff, underscores the substantial grounds for difference of opinion here, as well as their consequential import in a case like this one.

*See In re Horizon*, 846 F.3d at 634 n.22 (explaining that the "particularization requirement may impose limits on the ability of consumers to bring suit due to more generalized grievances").

In sum, there are multiple independent reasons why the April 28, 2025 order gives rise to substantial grounds for difference of opinion. The need for further guidance from the Third Circuit on questions like these which have deeply divided courts is manifest.

## IV. An Immediate Appeal Of This Court's Order Denying Dismissal For Lack Of Article III May Materially Advance The Ultimate Resolution Of This Case

An immediate appellate answer on the controlling standing question presented may materially advance the ultimate resolution of this litigation. Section 1292(b)'s "materially advance" factor is "'closely tied to the requirement that the order involve a controlling question.'" *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 2:10-cv-143, 2014 U.S. Dist. LEXIS 197504, *40 (W.D. Pa. May, 2014) (quoting 16 Charles Alan Wright, et al., *Federal Prac. & Proc. Juris.* § 3930 (2d ed. 1996). The two requirements are often satisfied "[f]or the same reason," namely that reversal could terminate the litigation, as here. *Klapper*, 662 F. Supp. at 236.

That, however, is not the only way an appeal could materially accelerate a case. "[A]ll that section 1292(b) requires … is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Thus, "simplify[ing] a case by foreclosing complex issues [via appeal], or enable[ing] the parties to complete discovery more quickly or at less expense," *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 707 (M.D. Pa. 2009), or even increasing the likelihood of "settlement possibilities" through a definitive appellate answer on a critical disputed question, is enough. *Katz*, 496 F.2d at 755.

Here, an interlocutory appeal could materially advance the ultimate termination of this litigation. If the Third Circuit were to conclude that all named Plaintiffs "have no standing, the

litigation will be terminated[.]" *Klapper*, 662 F. Supp. at 236 (material advancement shown for that reason with "no significant arguments" to the contrary).

If the Third Circuit were to reverse only in part and find that some named Plaintiffs lack standing, that too would materially advance this complex putative class action. Such a ruling would narrow the suit to only those persons whose claims are definitively actionable, which could "significantly reduce the number of issues to be litigated, the amount of time necessary to try the case, and the expense of a costly [] trial[.]" *Stecyk v. Bell Helicopter Textron*, No. 94-cv-1818, 1998 U.S. Dist. LEXIS 44, at *12 (E.D. Pa. Jan. 5, 1998) ("Complete cessation of the litigation as to all claims and all parties is not required in order for a resolution of a question to materially advance"); *accord Sterk*, 672 F.3d at 536. By contrast, if a partial reversal of this Court's standing decision was delayed until after final judgment, that could require a do-over (and waste) of expensive and time-consuming proceedings, with a set of "second" duplicate proceedings "necessary" given that the first occurred in part without jurisdiction. *In re Baker & Getty Fin. Servs.*, 954 F.2d 1169, 1172 (6th Cir. 1992).

Irrespective of the appellate outcome, this case is ripe for certification. It is a complex putative class action in its procedural infancy with expensive and time-consuming discovery and class certification proceedings not yet having begun. *See In re Chocolate*, 607 F. Supp. 2d at 707-08 (certification "could significantly advance" case where "[d]iscovery on class and merits issues has not yet commenced and will likely implicate reams of documents, weeks of depositions, and a battery of interrogatories and requests for admissions"); *Montgomery County v. Merscorp, Inc.*, No. 11-CV-6968, 2014 U.S. Dist. LEXIS 129096, *2 n.2 (E.D. Pa. Sept. 8, 2014) (certifying because "action is in many respects still in its infancy"); *Ungar v. Dunkin' Donuts of Am., Inc.*, Nos. 72-88, 72-1526, 1975 U.S. Dist. LEXIS 12964, at *12 (E.D. Pa. Arp. 8, 1975) (certifying

and emphasizing the "added time of the District Court [that] must be committed to a class action proceeding").

A definitive answer on standing—a consequential issue in a data breach case—would shape the scope of the litigation before the Court. It also could narrow disputed issues in the case, reduce the expenditure of unnecessary costs and resources by the parties and the Court, and perhaps even advance the likelihood of an amicable resolution of the case. *See Katz*, 496 F.2d at 755 (impact on "settlement possibilities" should guide certification decision); *Schalliol v. Fare*, 206 F. Supp. 2d 689, 701 (E.D. Pa. 2002) ("[A]n immediate appeal may materially advance the ultimate termination of the litigation by providing the parties with certainty as to the scope of possible financial exposure"); *accord Ungar*, 1975 U.S. Dist. LEXIS 12964, at *12.

An immediate appeal not only could advance this case, but others as well. Although § 1292(b) requires no such showing, that potential to resolve controlling legal questions across multiple cases puts an additional thumb on the scale in favor of certification. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court"); *Al Maqaleh v. Gates*, 620 F. Supp. 2d 51, 55 (D.D.C. 2009) ("[I]nterlocutory appeal is warranted where the jurisdictional determination will impact numerous cases"); *accord Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992). Data breach cases are not going away, nor are the tricky standing issues they present. Certification thus could "materially advance the instant matter and bring clarity to a still-developing area of law," *In re Chocolate*, 607 F. Supp. 2d at 708, achieving the very "institutional efficiency" that drove Congress to enact § 1292(b) in the first place, *Forsyth v. Kleindienst*, 599 F.2d 1203, 1208 (3d Cir. 1979).

## CONCLUSION

Faithful application of controlling law shows this matter to be a clear case for certification and immediate interlocutory review under § 1292(b). The controlling and highly debatable standing question presented goes to the Court's very authority to proceed further in the case, "present[ing] the precise situation that § 1292(b) was designed to avoid." *Beazer*, 2006 U.S. Dist. LEXIS 74743, at *8 (certifying and stating that a question of "subject matter jurisdiction meets all three criteria set forth in § 1292(b)"); *see Katz*, 496 F.2d at 755 (stating that ruling on "dismissal for want of jurisdiction is within § 1292(b)"). Therefore, the Court should grant Highmark's Motion and certify the April 28, 2025 Order for immediate appeal under 28 U.S.C. § 1292(b).

Dated: May 23, 2025

Respectfully submitted,

**REED SMITH LLP**

/s/ *Justin J. Kontul*
Justin J. Kontul (PA ID No. 206026)
Michael B. Galibois (IL ID No. 6272257, pro hac vice)
Ted A. Hages (PA ID No. 327324)

REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tel. 412.288.3131
Fac. 412.288.3063
jkontul@reedsmith.com
mgalibois@reedsmith.com
thages@reedsmith.com

*Counsel for Highmark Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May 2025, a true and correct copy of the foregoing document was filed via the Electronic Case Filing (ECF) System, which will be forwarded to all counsel of record.

**REED SMITH, LLP**

By: /s/ *Justin J. Kontul*
Justin J. Kontul