**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHANELLE ZIMMERMAN, BARBARA STEETLE, ROBERT WARUSZEWSKI, WENDY MARSHALL, ANGELA HOLLANDSWORTH, and KEVIN HARRISON individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 2:23-cv-250-NR<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| HIGHMARK, INC., a Pennsylvania Corporation, | )<br>)<br>) |
| Defendant. | )<br>) |

**<u>ORDER</u>**

On April 28, 2025, the Court issued an opinion in which it granted in part and denied in part Highmark's motion to dismiss Plaintiffs' amended complaint. ECF 42. On May 23, 2025, Highmark filed a motion for a certificate of appealability under 28 U.S.C. § 1292(b). ECF 49. For the reasons set forth below, the Court denies the motion.

Under 28 U.S.C. § 1292(b), a district judge may certify an interlocutory order for appeal if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and [] an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. 1292(b).

For a district court to grant a certificate of appealability, the Court's order must: (1) involve a controlling question of law; (2) offer substantial ground for differing opinions; and (3) materially advance the termination of the litigation if appealed immediately. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc). "However, the court should not certify questions of relatively clear law

merely because the losing party disagrees with the court's analysis." *In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 706 (M.D. Pa. 2009). Even if the criteria are met, certification is not mandatory—"permission to appeal" is within the discretion of the district court. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976). "And in exercising its discretion, a district court should be mindful of the strong policy against piecemeal appeals." *MLB Players, Inc. v. DraftKings, Inc.*, No. 24-4884, 2025 WL 1462547, at *2 (E.D. Pa. May 21, 2025) (internal quotation omitted). Here, Highmark fails to satisfy the criteria in the statute.

**Controlling law**. "A controlling question of law is one in which, either: (1) if erroneous, would be reversible error on final appeal; or (2) is serious to the conduct of the litigation, either practically or legally." *Abramson v. AP Gas & Electric (PA)*, LLC, No. 22-1299, 2023 WL 2714340, at *1 (W.D. Pa. Mar. 30, 2023) (Kelly, M.J.) (cleaned up). The parties do not dispute that the question of standing is generally a controlling question of law (ECF 50, pp. 12-14; ECF 52, p. 10 n.1), and the Court agrees.

**Substantial ground for differing opinion**. "For purposes of 28 U.S.C. § 1292(b), substantial grounds for difference of opinion exist[] where there is genuine doubt or conflicting precedent as to the correct legal standard, conflicting and contradictory opinions, or the absence of controlling law on a particular issue." *Gibel v. Iron Cumberland, LLC*, No. 23-2050, 2025 WL 745220, at *2 (W.D. Pa. Mar. 7, 2025) (Hardy, J.). A party's disagreement with the Court's application of controlling law does not satisfy this prong of the test. *Id.* at *3.

In the Court's estimation, this is where Highmark's motion mainly fails. There is no question that the two governing cases concerning standing in data-breach cases are *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) and *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022). *See* ECF 50; ECF 52. But at its core, Highmark's main complaint with the Court's opinion is in how this Court applied the facts (as

pled) to the law—specifically, the Court's application of the three main factors in *Clemens*. This isn't, for example, a case where the legal standard is in doubt.[1]

Highmark tries to paint this as more of a legal dispute, by arguing that there is some doubt in the legal standard as to whether "potential" misuse is enough to confer standing. ECF 50, pp. 14-17. But the Third Circuit already addressed that issue. *Clemens*, 48 F.4th at 154 ("Of note, misuse is not necessarily required."). Similarly, Highmark argues that there is some doubt as to whether a malicious phishing email from an unknown actor is "intentional," as *Clemens* contemplated. ECF 50, pp. 17-19. The Court finds that the Third Circuit already addressed that issue in *Clemens*;[2] but even if it didn't, this is a matter of degree. Courts apply the *Clemens* guideposts together and oftentimes as a sliding scale. So, the question of whether a phishing email qualifies as an "intentional" breach isn't the sort of controlling question that is amenable to immediate review.

In the end, the real quibble Highmark has here is in the application and weighing of the *Clemens* factors. Some district courts, considering the specific allegations in the complaints, have found standing. *See, e.g.*, *Tignor v. Dollar Energy Fund, Inc.*, 745 F. Supp. 3d 189 (W.D. Pa. 2024) (Stickman, J.). Others have not. *See, e.g.*, *Boje v. Mercyhurst Univ.*, No. 23-46, 2024 WL 964892 (W.D. Pa. Mar. 6, 2024) (Baxter, J.). But these differences "merely reflect the courts' application of a clear legal standard to the varied factual and contextual circumstances in different cases, and not a genuine doubt or conflicting precedent as to the correct legal standard that these courts must apply." *Gibel*, 2025 WL 745220, at *3.

---

[1] There is also no conflict between *Reilly* and *Clemens*, given that the Third Circuit in *Clemens* expressly considered and distinguished *Reilly* in its analysis. *Clemens*, 48 F.4th at 153, 156-57 (discussing the applicability of *Reilly*).

[2] For example, the Third Circuit cited and relied on *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) in discussing the "intentional" prong—a case involving an attack by unknown hackers. *Clemens*, 48 F.4th at 153.

For these reasons, Highmark has failed to satisfy this prong of the test.[3]

**_Material advancement of the ultimate resolution of the case_**.  Positioning this case now for an interlocutory appeal will not materially advance the resolution, because any decision by the Third Circuit would likely not be case ending.  That is, even if Highmark were to prevail on an appeal, the odds are strong that it will result in a remand for further consideration by this Court, and very likely an opportunity for Plaintiffs to re-plead.  When an interlocutory appeal would lead to a re-pleading, judicial economy is not served by allowing the appeal.  *Hartman v. Banks*, No. 93-3344, 1995 WL 508204, at *3 (E.D. Pa. Aug. 24, 1995).

Further, balancing the efficiencies of advancing this case, in connection with Highmark's position on standing, it would probably be more efficient to move this case forward for a more fulsome development of the record, and if, necessary, to assess standing at a later stage.  If discovery leads to facts that are at odds with the allegations in the amended complaint and that would materially affect the Court's standing analysis, Highmark could potentially move for summary judgment on the issue of standing on a different record.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (stating that because the elements of standing are "an indispensable part of the plaintiff's case, each element must be supported in the same way as any other

_____

[3] Highmark also contends that the Court erred in not conducting a plaintiff-specific standing analysis or engaging in a more rigorous plaintiff-specific traceability analysis.  Plaintiffs respond that Highmark waived these arguments.  These arguments were never positioned clearly before the Court in the course of the motion-to-dismiss briefing, and so Plaintiffs' waiver arguments are strong.  Waiver or not, this issue doesn't move the needle on the question of certification.  Given that this is a class action and there are several named Plaintiffs, all that matters is that one named Plaintiff has standing; traceability issues as to specific Plaintiffs can be sorted out through amendment of the pleadings or at class certification.  *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 314 (3d Cir. 2023) (stating that "in class actions, at least one class representative must have experienced a concrete injury for each asserted claim"); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("Accordingly, at least one of the four named Plaintiffs must have Article III standing in order to maintain this class action.").

matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). This is all the more reason that a certification at this juncture would be less efficient to the advancement of the case.

* * *

Because Highmark has failed to satisfy the three prongs of the test for a certificate of appealability, and keeping in mind the strong policy against piecemeal appeals, after careful consideration, the Court exercises its discretion and hereby **ORDERS** that Defendant's motion for certificate of appealability (ECF 49) is **DENIED.**

DATE: June 20, 2025                          BY THE COURT:

                                             /s/ *J. Nicholas Ranjan*
                                             United States District Judge